UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
HECTOR ORTIZ, in his capacity as the  :
Temporary Administrator for the Estate:        17cv4039(DLC)
of VICKY ORTIZ, individually and on   :
behalf of all others similarly        :        OPINION & ORDER
situated,                             :
                                      :
                    Plaintiffs,       :
                                      :
              -v-                     :
                                      :
CIOX HEALTH LLC, as successor in      :
interest of IOD INC., and THE NEW YORK:
AND PRESBYTERIAN HOSPITAL,            :
                                      :
                    Defendants.       :
                                      :
--------------------------------------X

APPEARANCES

For the Plaintiff:
Lowell J. Sidney
244 5th Avenue, Suite Q278
New York, NY 10001

For Defendant CIOX Health LLC:
Kathryn A. Tiskus
Hodgson Russ LLP
604 Third Avenue, 23rd Floor
New York, NY 10158

Jodyann Galvin
Aaron M. Saykin
Hodgson Russ LLP
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040

For Defendant The New York and Presbyterian Hospital:
John Houston Pope
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

DENISE COTE, District Judge:

Hector Ortiz brings this proposed class action against CIOX Health LLC ("CIOX") and the New York and Presbyterian Hospital ("NYPH").  He seeks damages and injunctive relief arising out of defendants' alleged violations of New York Public Health Law § 18 ("§ 18"), which prohibits health care providers from charging qualified persons more than $0.75 per page for copies of their medical records.  This Opinion addresses the defendants' second motion to dismiss this action.  Because there is no private right of action under § 18, this action is dismissed.

## Background

The facts as alleged in the First Amended Complaint ("FAC") have been described in an Opinion of February 22, 2018, which is incorporated by reference.  See Ortiz v. CIOX Health LLC, No. 17cv4039(DLC), 2018 WL 1033237, at *1 (S.D.N.Y. February 22, 2018) ("February 2018 Opinion").  In sum, Vicky Ortiz ("Ortiz"), through her attorney, made a written request to NYPH for her medical records in October 2016.  The request indicated that, pursuant to § 18(2)(e), NYPH could not charge Ortiz more than $0.75 per page.  NYPH's contractor, a predecessor in interest to CIOX, charged Ortiz $1.50 per page for her medical records. Ortiz paid the bill and subsequently filed this class action.

2

Shortly thereafter, CIOX unilaterally refunded Ortiz's credit card the amount charged above the $0.75 statutory maximum.

The February 2018 Opinion dismissed several counts of the FAC but allowed a single claim, for a violation of § 18(2)(e), to go forward.  Id. at *6.  On May 14, 2018, Ortiz's counsel informed the Court that Ortiz had died.  An Order of October 16 granted plaintiff's application to substitute Hector Ortiz, in his capacity as temporary administrator of the Ortiz estate, as the party plaintiff.

On October 31, CIOX and NYPH filed motions for judgment on the pleadings or to dismiss the remaining cause of action.  NYPH and CIOX assert that the plaintiff lacks standing to pursue either damages or injunctive relief, that § 18(2)(e) does not accord a private right of action, that the plaintiff's proposed class is overbroad, and that CIOX's copying costs are not at issue in this litigation.[1]  Because § 18(2)(e) does not accord a private right of action, only the first two claims are addressed.

---

[1] In the alternative, NYPH moves for certification of an interlocutory appeal of certain jurisdictional rulings in the February 2018 Opinion and the viability of an implied private right of action under § 18.

**Discussion**

I.  Article III Standing

"Whether a plaintiff possesses standing to sue under Article III is the threshold question in every federal case, determining the power of the court to entertain the suit."  Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin., 894 F.3d 95, 103 (2d Cir. 2018) (citation omitted).  To establish Article III standing, a plaintiff must demonstrate:

> (1) injury-in-fact, which means an actual or imminent and concrete and particularized harm to a legally protected interest; (2) causation of the injury, which means that the injury is fairly traceable to the challenged action of the defendant; and (3) redressability, which means that it is likely, not speculative, that a favorable decision by a court will redress the injury.

Id. (citation omitted).  A plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  Davis v. FEC, 554 U.S. 724, 734 (2008) (citation omitted).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).  "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been

4

injured, not that injury has been suffered by other, unidentified members of the class to which they belong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 n.6 (2016) (citation omitted).

CIOX and NYPH moved earlier in this case to dismiss Ortiz's claims for lack of standing.  They argued that Ortiz lacked standing to pursue her claims for damages because the FAC failed to allege that she, rather than her attorney, was injured.  They also argued that the FAC failed to allege a likelihood of future injury sufficient to confer standing for injunctive relief. They further argued that, even if Ortiz had standing at one point, her claims became moot when CIOX unilaterally refunded to her credit card the amount of the alleged overcharge.  Each of these arguments was rejected in the February 2018 Opinion.  See Ortiz, 2018 WL 1033237, at *2-3.

In their current motion, the defendants reframe their mootness argument as a standing argument.  It remains a mootness argument, see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000), and it was properly rejected as such in the February 2018 Opinion.  Ortiz, 2018 WL 1033237, at *3; Geismann v. ZocDoc, Inc., 909 F.3d 534, 543 (2d Cir. 2018).

The defendants additionally argue that, because Ortiz recently died, Hector Ortiz does not have standing to pursue

claims for injunctive relief on her behalf.  The defendants are incorrect.  Although Ortiz has died, it is plausible that her estate will need to obtain copies of her medical records in connection with the administration of her estate.  Section 18 allows representatives of a decedent's estate to obtain medical records; persons with power of attorney to make such requests are "qualified persons" under the statute.  See N.Y. Pub. Health L. ("PHL") § 18(1)(g).  Hector Ortiz brings this litigation in his capacity as temporary administrator of Ortiz's estate.  As such, Ortiz's death does not impact Hector Ortiz's standing to seek injunctive relief.

II.  Private Right of Action

Defendants seek judgment on the pleadings on the grounds that § 18(2)(e) contains neither an express nor implied private right of action.  The defendants are correct.

Section 18 does not contain any express grant of a private right of action.  Where a statute does not expressly provide for a private right of action, a plaintiff "can seek civil relief in a plenary action based on a violation of the statute only if a legislative intent to create such a right is fairly implied in the statutory provisions and their legislative history."  Cruz v. TD Bank, N.A., 22 N.Y.3d 61, 70 (2014) (citation omitted).  "[I]t is for the courts to determine, in light of those provisions, particularly those relating to sanction and

enforcement, and their legislative history . . . what the
Legislature intended." Burns Jackson Miller Summit & Spitzer v.
Linder, 59 N.Y.2d 314, 325 (1983); see also Uhr v. E. Greenbush
Cent. Sch. Dist., 94 N.Y.2d 32, 38 (1999).

The New York Court of Appeals has articulated a three-part
test to govern this inquiry.  Courts must determine "(1) whether
the plaintiff is one of the class for whose particular benefit
the statute was enacted; (2) whether recognition of a private
right of action would promote the legislative purpose; and (3)
whether creation of such a right would be consistent with the
legislative scheme." Cruz, 22 N.Y.3d at 70 (citation omitted).
Among these factors, the third is the "most important." Id.

The "[a]nalysis begins, of course, with the statute
itself." Burns Jackson, 59 N.Y.2d at 325; see also Nat. Res.
Def. Council, Inc. v. U.S. Food and Drug Admin., 760 F.3d 151,
172 (2d Cir. 2014).  New York's Public Health Law provides a
comprehensive framework for the regulation of public health
services.  It establishes the powers, functions, and duties of
the Department of Health, and it provides, among other things,
the laws and regulations that govern state laboratories, local
health organizations, public water supplies, and state and
federal aid.

Since at least 1953, when the Public Health Law was
recodified to reflect its current organization, the law has

7

provided two mechanisms to enforce its provisions:  a civil penalty, imposed by the Commissioner of Health, or an action pursuant to Article 78 of the Civil Practice Law and Rules. Compare 1953 N.Y. Sess. L., ch. 879, §§ 12-13, with PHL §§ 12-13.  Section 12 of the Public Health Law authorizes the Commissioner of Health to impose a fine of $2,000 per violation -- escalating to up to $5,000 for any subsequent violation -- on "any person who violates . . . any term or provision of this chapter . . . for which a civil penalty is not otherwise expressly prescribed by law."  PHL § 12(1)(a)-(b).[2]  Section 13 provides that "[t]he performance of any duty or the doing of any act enjoined, prescribed or required by this chapter, may be enforced by a proceeding pursuant to article seventy-eight of the civil practice law and rules . . . ."  Id. § 13.  As has been true since 1953, a proceeding under Article 78 may be brought by a state agency or by "any citizen of full age resident of the municipality where the duty should be performed or the act done."  Id.

_____

[2] Section 12 was recently amended with certain changes going into effect beginning April 1, 2020.  Those amendments would allow the Attorney General, upon request of the Commissioner of Health, to bring an action for injunctive relief.  The amendment effective April 1, 2020 further provides that, "it is the purpose of this section to provide additional and cumulative remedies, and nothing herein contained shall abridge or alter rights of action or remedies now or hereafter existing . . . ." PHL § 12(6) (effective Apr. 1, 2020).

On July 21, 1986, the New York Legislature amended the
Public Health Law by adding § 18, which allows patients and
other "qualified persons" access to patient medical records.
1986 N.Y. Sess. L., ch. 497, § 1.  Section 18(2)(a) requires
health care providers to provide an opportunity for the
inspection of patient information on written request.  Section
18(2)(d) provides a right to a copy of patient records.  It
states that, "upon the written request of any qualified person,
a health care provider shall furnish to such person, within a
reasonable time, a copy of any patient information
requested . . . ."  PHL § 18(2)(d).[3]

The statute also gave providers a right to reimbursement.
Section 18(2)(e) authorizes the provider to impose "a reasonable
charge for all inspections and copies, not exceeding the costs
incurred by such provider."  Id. § 18(2)(e).  It further
provides that "[a] qualified person shall not be denied access
to patient information solely because of inability to pay."  Id.

The 1986 amendment to the Public Health Law also authorized
health care providers to restrict a qualified person's access to
medical records in certain circumstances.  Under § 18(3), a
health care provider "may deny access to all or a part of the

---

[3] All citations are to the current version of the statute.
Unless otherwise noted, language quoted from § 18 is unchanged
since 1986.

information" if, for example, the records requested would "reasonably be expected to cause substantial and identifiable harm to the subject." Id. § 18(3)(d).  In the event of a denial of access, § 18(3)(e) grants the qualified person an administrative remedy in the form of a "right to obtain, without cost, a review of the denial by the appropriate medical record access review committee." Id. § 18(3)(e).[4]  In the event the committee denies access "in whole or in part," it is required to "notify the qualified person of his or her right to . . . commence, upon notice, a special proceeding in supreme court requiring the provider to make available the information for inspection or copying." Id. § 18(3)(f).

This right to judicial review, however, was accompanied by more limited remedies than those ordinarily available in an Article 78 special proceeding.  Article 78 generally permits recovery for "restitution or damages . . . incidental to the primary relief sought." C.P.L.R. § 7806; Kirschner v. Klemons, 225 F.3d 227, 238-39 (2d Cir. 2000).  The 1986 amendment prohibited qualified persons from seeking incidental damages. It provided that "the relief available pursuant to [§ 18(3)(f)] shall be limited to a judgement requiring the provider to make

---

[4] The Commissioner of Health is required by statute to "designate medical record access review committees to hear appeals of the denial of access . . . ." PHL § 18(4).

available to the qualified person the requested information for inspection or copying."  PHL § 18(3)(f).  Section 18(11) provided that "[n]o proceeding shall be brought or penalty assessed, except as provided for in this section, against a health care provider, who in good faith, denies access to patient information."  Id. § 18(11).

Against this backdrop, on June 12, 1991, the New York Legislature passed an amendment to § 18 that is the subject of this litigation.  1991 N.Y. Sess. L., ch. 165, § 49.  That amendment added a single sentence to § 18(2)(e), limiting the "reasonable charge" which a health care provider may impose in connection with copies of medical records to not more than $0.75 per page.  As currently enacted, § 18(2)(e) provides as follows:

> The provider may impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider . . . .  However, the reasonable charge for paper copies shall not exceed seventy-five cents per page.  A qualified person shall not be denied access to patient information solely because of inability to pay.

PHL § 18(2)(e) (emphasis added).

At issue is whether, by prohibiting health care providers from charging more than $0.75 per page in connection with inspecting or copying medical records, the Legislature implied a private right of action.  For the reasons described below, the text, structure, and legislative history of § 18(2)(e) do not permit a finding that New York's Legislature intended to create

11

a private right of action.

As a threshold matter, there is no dispute that the first factor weighs in favor of recognizing a private right of action for violations of § 18(2)(e).  The price-per-page provision was added to § 18 in 1991, five years after the Legislature first afforded consumers an opportunity to inspect and obtain copies of their medical records.  1991 N.Y. Sess. L., ch. 165, § 49. The provision capped the charges health care providers may impose on qualified persons for medical records.  Ortiz is among those qualified persons for whose particular benefit § 18(2)(e) was enacted.  See Cruz, 22 N.Y.3d at 70.

It is less clear that the recognition of a private right of action would promote the legislative purpose in enacting the statute, which is the second factor.  The one-sentence amendment that was made to § 18 was a miniscule part of a massive overhaul to the Public Health Law that principally revised New York's Medicaid program.  See 1991 N.Y. Sess. L., ch. 165.  When the bill was submitted to then Governor Mario Cuomo for approval, a Memorandum from the Senate and various submissions were included in the Bill Jacket for the Governor's review.[5]  Broadly speaking,

---

[5] The New York Court of Appeals commonly relies on submissions included in the Bill Jacket as a source of legislative history. See, e.g., Kimmel v. State, 29 N.Y.3d 386, 398-400 (2017) (citing various submissions included in a Bill Jacket).

the Senate Memorandum explains that the purpose of the Act is
"to restrain the rapid growth in costs of the Medicaid system"
through "structural changes in the way Medicaid services are
provided."  Senate Memorandum, Bill Jacket, L. 1991, ch. 165, at
19.

Two submissions included in the Bill Jacket -- one from the
New York State Office for the Aging and one from the New York
Public Interest Research Group -- addressed the price-per-page
provision in § 18 specifically.  Both submissions supported the
amendment as a means of curbing fees associated with access to
medical records.  The submission by the Office for the Aging
stated, in part:

> These Sections impose a ceiling on the amount that may
> reasonably be charged for paper copies of medical
> records requested by patients and other "qualified
> persons."  The New York State Office for the Aging
> supports this measure and recommends careful
> monitoring to help ensure that the ceiling of seventy-
> five cents per page not become a standard charge.  The
> reasonable cost of providing many medical records is
> less than seventy-five cents per page.

Letter from the Office for the Aging, Bill Jacket, L. 1991, ch.
165, at 50.  By enacting the price-per-page provision, the
Legislature clearly intended to control patient costs associated
with access to medical records.  Because the threat of an
additional enforcement mechanism -- civil lawsuits against
health care providers -- would likely add to the growth in
medical costs, it is debatable whether recognition of a private

13

right of action would promote the legislative purpose, whether considered from the perspective of either § 18 alone or in the context of the 1991 revisions to the Public Health Law in their entirety.

The third factor is whether recognition of a private right of action "would be consistent with the legislative scheme." Cruz, 22 N.Y.3d at 70 (citation omitted).  When discussing the third factor, the Court of Appeals has repeatedly emphasized deference to the enforcement mechanisms chosen by the Legislature:

> [T]he Legislature has both the right and the authority
> to select the methods to be used in effectuating its
> goals, as well as to choose the goals themselves.
> Thus, regardless of its consistency with the basic
> legislative goal, a private right of action should not
> be judicially sanctioned if it is incompatible with
> the enforcement mechanism chosen by the Legislature or
> with some other aspect of the over-all statutory
> scheme.

Id. at 70-71 (quoting Sheehy v. Big Flats Cmty. Day, 73 N.Y.2d 629, 634-35 (1989)).  A potent enforcement mechanism reflects a legislative judgment that courts should not readily dismiss. See Rhodes v. Herz, 920 N.Y.S.2d 11, 18 (App. Div. 1st Dep't 2011).  "Where the Legislature has not been completely silent but has instead made express provision for a civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage . . . ."  Sheehy, 73 N.Y.2d at

14

636.  For this reason, the Court of Appeals has declined to recognize a private right of action where "the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."  Cruz, 22 N.Y.3d at 71 (citation omitted).

The New York Legislature has provided two mechanisms to enforce the $0.75 maximum copying charge described in § 18(2)(e).  First, under § 12, the Legislature has authorized the Commissioner of Health to impose substantial fines for violations of any provision of the Public Health Law "for which a civil penalty is not otherwise expressly prescribed by law."  PHL § 12(1)(a)-(b).  Because § 18(2)(e) does not prescribe a civil penalty, a violation of its terms may be subject to enforcement through § 12.  Second, under § 13, the Legislature has allowed New York citizens to enforce any provision of the Public Health Law through an action under Article 78.  The parties agree that an action under Article 78 would have allowed Ortiz to obtain a judgment compelling NYPH to provide her with copies of her medical records in compliance with § 18(2)(e) -- that is, at a reasonable charge not more than $0.75 per page. See In re Barbara Halio v. IOD Inc., 928 N.Y.S.2d 812, 812 (Sup. Ct. Nassau Cty. 2011) (petition to compel medical records at no more than $0.75 per page); In re Casillo v. St. John's Episcopal Hosp., Smithtown, 580 N.Y.S.2d 992, 993 (Sup. Ct. Suffolk Cty.

1992) (petition to forward medical records at no more than $0.75 per page).

The authorization of enforcement by the Commissioner of Health and the provision of a remedy pursuant to Article 78 are each sufficient to foreclose the recognition of a private right of action.  See, e.g., Schlessinger v. Valspar Corp., 686 F.3d 81, 87 (2d Cir. 2012) ("Section 395-a [of the N.Y. General Business Law] expressly provides that the Attorney General may bring suit against those who violate its mandate, so a private right of action would not be consistent with legislative intent."); Signature Health Cntr. LLC v. State, 935 N.Y.S.2d 357, 362 (App. Div. 3d Dep't 2011) (declining to imply private right of action under New York Public Health Law § 2807 where "there is no dispute that [plaintiffs] can obtain incidental monetary damages . . . in the context of a CPLR article 78 proceeding").

The Legislature's intent to limit the scope of the remedies under § 18 is confirmed by other provisions of the statute.  In § 18(3), for example, the Public Health Law provides that, in the event of a denial of access to medical records, a qualified person may seek review by a committee designated by the Commissioner of Health.  PHL § 18(3)(f), (4).  If the committee reaches an adverse decision, § 18 further authorizes the qualified person to seek judicial review in an Article 78

16

proceeding.[6]  Id. § 18(3)(f).  Although § 18(3)(f) prohibits recovery of incidental damages that may ordinarily be recovered in an Article 78 proceeding, it allows for "a judgment requiring the provider to make available to the qualified person the requested information for inspection or copying."  Id. Section 18(11) provides further protection for health care providers against lawsuits.  It prohibits any other proceedings or penalties against health care providers who, "in good faith, deny access to patient information."  Id. § 18(11).[7]

Given that the Legislature established specific administrative and judicial remedies in § 18, "[i]t is fair to infer that the Legislature considered carefully the best means for enforcing the provisions of [the statute], and would have created a private right of action . . . if it found it wise to do so."  McLean v. City of New York, 12 N.Y.3d 194, 201 (2009);

---

[6] An action pursuant to N.Y. C.P.L.R. Article 78 is a "special proceeding."  N.Y. C.P.L.R. § 7804.

[7] Sections 18(12) further immunizes health care providers from liability "arising solely from granting or providing access to any patient information in accordance with this section." Although Sections 18(11) and (12) do not provide immunity for overcharges in violation of § 18(2)(e), see Spiro v. Healthport Tech., 73 F. Supp. 3d 259, 273 (S.D.N.Y. 2014), they should not be read to imply a private right of action by negative implication.  As the Court of Appeals explained in Cruz, "this would be an unusual application of the expressio unius doctrine for it is typically used to limit the expansion of a right or exception -- not as a basis for recognizing unexpressed rights by negative implication."  Cruz, 22 N.Y.3d at 72.

see also Franza v. State, 83 N.Y.S.3d 361, 363 (App. Div. 3d Dep't 2018) (citation omitted) (finding private right of action "inconsistent with the legislative scheme" where statute "provides recourse under CPLR article 78"). While the Legislature could have crafted a broader remedy, "[t]his is not a case where the Legislature has simply prohibited or required certain conduct, and left the mechanism of enforcement to the courts." McLean, 12 N.Y.3d at 201.[8] Accordingly, a private right of action would not be consistent with the legislative scheme.

The plaintiff argues that a private right of action should be allowed because § 18(2)(e) uses mandatory language that confers rights on particular individuals. He principally relies on Maimonides Med. Cent. v. First United Am. Life Ins. Co., 981 N.Y.S.2d 739 (App. Div. 2d Dep't 2014), and Medicare Beneficiaries Def. Fund v. Memorial Sloan-Kettering Cancer Cent., 603 N.Y.S.2d 1016 (Sup. Ct. N.Y. Cnty. 1993), which recognized private rights of action. His arguments are unavailing.

In both of these cases, the courts found a private right of

---

[8] Plaintiff's citation to Negrin v. Norwest Mortgage, Inc., 700 N.Y.S.2d 184 (App. Div. 2d Dep't 1999), is for this reason inapposite. In Negrin, the statute provided "no regulatory agency that would otherwise enforce compliance" with the law. Id. at 191.

action to exist when construing clauses contained within statutory provisions that were addressed directly to the remedies for a violation.  Section 18(2)(e) is not a remedies provision; its is a standards provision.

In Maimonides, the court construed a New York insurance law that imposed standards upon insurers for prompt payment of claims.  981 N.Y.S.2d at 741.  In a section setting out remedies for the failure to comply with those standards, the statute stated:

> In addition to the penalties provided in this chapter, any insurer . . . that fails to adhere to the standards contained in this section shall be obligated to pay to the health care provider or person submitting the claim, in full settlement of the claim or bill for health services, the amount of the claim or health care payment plus interest.

N.Y. Ins. L. § 3224-a (emphasis added).  The court found that the obligation "to pay . . . the claim," found in the remedies section of the statute, authorized a private right of action. Maimonides, 981 N.Y.S.2d at 747-50.

Likewise, in Medicare Beneficiaries Def. Fund, the court addressed a clause in the statute's description of a remedy, in this case for a physician's overcharge of Medicare beneficiaries.  603 N.Y.S.2d at 1017-18.  The statute provided that "a physician who is determined . . . to have violated the provisions of this section shall be subject . . . to a fine . . . .  In addition, . . . the physician shall refund to

19

the beneficiary the amount collected in excess of the limitations [provided herein]." PHL § 19(4)(emphasis added). Thus, the court found that the statute authorized suit for not only a fine but also for a refund. In both Maimonides and Medicare Beneficiaries, therefore, the statutes expressly mandated, within their remedies provisions, the payment of a claim or a refund following a violation of the statute.

The sentence setting forth the maximum price-per-page in § 18(2)(e) bears none of the hallmarks of the provisions which the courts in Maimonides and Medicare Beneficiaries found to imply a private right of action. Section 18(2)(e) sets forth the standards with which providers must comply when providing access to medical records. Section 18(2)(e) is not a remedies provision and therefore the sentence at issue does not appear in the midst of a remedies provision. Moreover, the sentence itself sets out a maximum charge but not a remedy for an overcharge. It cannot fairly be read to authorize a private right of action if the provider charged the person requesting a copy of the records over $0.75 per page.

Plaintiff's citation to Medicare Beneficiaries Def. Fund is unavailing for other reasons as well. Medicare Beneficiaries concerned § 19 of the Public Health Law, where the Legislature required physicians to "refund to the beneficiary the amount collected in excess" of the "reasonable charge." PHL § 19(1),

(4).  Section 19 was added to the Public Health Law in July 1990 during the 213th legislative session.  1990 N.Y. Sess. L, ch. 572.  In the very next session -- less than one year later -- the Legislature enacted the amendment to § 18(2)(e) capping the reasonable charge for copies of medical records at $0.75 per page.  1991 N.Y. Sess. L., ch. 165, § 49.  Although enactment of these two provisions are nearly contemporaneous, only § 19 requires a refund of charges that exceed the statutory limit. "A due respect for the competence of the Legislature requires us to conclude that the [different] remedial choices it made were considered choices."  People ex rel. Spitzer v. Grasso, 836 N.Y.S.2d 40, 49 (App. Div. 1st Dep't 2007).  Without "strong indicia of a contrary congressional intent," it would be inappropriate to disturb this legislative judgment.  Id. (declining to recognize a private right of action where statute authorized enforcement by the Attorney General).

Plaintiff next argues that a private right of action is appropriate because "no special agency expertise is required to determine whether Defendants charged more than the statutory maximum."  A court's competence to perform calculations is not a sufficient basis for concluding that a private right of action is consistent with the legislative scheme.  In any event, plaintiff is wrong to assume that actions brought under § 18(2)(e) would be resolved by simple calculation.  Section

18(2)(e) principally requires health care providers to impose "a reasonable charge . . . not exceeding the costs incurred by such provider."  PHL § 18(2)(e).  Calculating damages in those cases could require resource-intensive litigation.  As the court in Casillo explained in 1992, "[t]he 1991 amendments capping copying costs within the definition of 'reasonable charge' was not intended to create a plethora of litigation where the courts would be forced to determine what is an allowable fee in this case or that case."  580 N.Y.S.2d at 998.

Finally, plaintiff emphasizes that, in several other cases, courts appear to have assumed that § 18(2)(e) accords qualified persons a private right of action for damages.  One of these decisions, Ruzhinskaya v. Healthport Techs., LLC, 291 F. Supp. 3d 484 (S.D.N.Y. 2018), which includes other claims besides a § 18 claim, is currently pending before the Second Circuit Court of Appeals.[9]  Id. at 502-03.  But none of the cases to which plaintiff cites have decided the issue on the merits.  The instant case appears to be the first case to squarely present the issue for judicial resolution.  And, for the reasons stated above, a private right of action cannot fairly be implied by the

---

[9] An earlier opinion in that case assumed the existence of a private right of action but noted that § 18's "text and history are silent as to the manner in which a requester's right not to be overcharged may be vindicated in court."  Ruzhinskaya, 311 F.R.D. 87, 97 (S.D.N.Y. 2015).

text and legislative history of § 18(2)(e).

## Conclusion

Defendants' October 31, 2018 motions for judgment on the pleadings are granted.  The Clerk of the Court is directed to close the case.


Dated:    New York, New York
          May 7, 2019

                        _____
                              DENISE COTE
                        United States District Judge